MORIAL, Judge.
Plaintiff, Eddie Pitts, appeals from a judgment of the district court dismissing his action for damages against defendants, Mrs. Ethel H. Lenz and her insurer, The Hanover Insurance Company.
On June 10, 1972 at approximately 9:00 A.M. plaintiff and defendant, Mrs. Lenz, were involved in an automobile accident at the intersection of N. Peters and Iberville Streets in the City of New Orleans. N. Peters Street is an undivided two-way street with double yellow striped lines separating the traffic lanes running uptown to Canal Street and downtown to Esplanade Avenue. The street allows two lanes of traffic to move toward Esplanade Avenue while a parking lane in the Canal Street *780 bound direction allows only one lane for moving traffic. Iberville Street runs one-way toward the river, and at its intersection with N. Peters, there is a stop sign requiring the vehicles on Iberville to stop and yield the right of way to the vehicles traveling on N. Peters. At the time of the accident, plaintiff was operating his vehicle on N. Peters Street heading toward Canal, while defendant was operating her vehicle in a river bound direction on Iberville Street. Plaintiff was alone in his vehicle. Defendant had one passenger, Mrs. Leona H. Terrebonne.
Plaintiff sued defendants for personal injury and property damages sustained as a result of the accident alleging the sole and proximate cause of the accident to be the negligence of Mrs. Lenz. Defendants in answering the petition denied the allegations of negligence and asserted as an affirmative defense contributory negligence on the part of plaintiff. After trial on four separate days conducted over the course of nearly three months, the trial court, without written reasons, rendered judgment in favor of defendants dismissing plaintiff’s suit at his costs. Plaintiff appeals. We reverse.
Plaintiff contends the record clearly establishes that the sole and proximate cause of the accident was the negligence of Mrs. Lenz in attempting to traverse the intersection at a time when it was obviously unsafe for her to do so.
Defendants contend that plaintiff was contributorily negligent in that he was proceeding at an excessive rate of speed and failed to keep his vehicle under proper control.
A total of five witnesses testified to the facts of the accident. Plaintiff testified that he was proceeding at a lawful rate of speed on N. Peters Street when, as he approached the intersection of N. Peters and Iberville Streets, suddenly and without warning defendant’s vehicle entered his path from Iberville Street at a time and in such close proximity to his vehicle that he could not avoid striking it.
Mrs. Lenz testified that she stopped at the stop sign at the intersection of Iber-ville and N. Peters Streets but could not see clearly due to cars in the parking lane of the Canal Street bound side of N. Peters Street. She stated she then proceeded forward until the front of her car was about even with the parked cars and stopped. She stated she then looked to the left through the windshield of a parked car situated about one car length from the corner, saw nothing, looked to the right, saw nothing, then to the left again, saw a car about a block away, and then assuming it was safe to do so, slowly proceeded forward into N. Peters Street with the intention of making a left turn onto N. Peters. She stated that the accident occurred after she had traveled approximately 12 to 14 feet to a position wherein the rear portion of her car was in plaintiff’s lane and the front portion of her car was across the double yellow lines which divide N. Peters Street. She admitted that she did not brake her vehicle after she began crossing the intersection and that she realized the collision was imminent only after she looked to her left upon hearing the squealing of plaintiff’s brakes. She estimated the speed of plaintiff’s vehicle at 40 to 45 mph stating that when she saw him he was heading for her “real fast” and therefore “he must have been flying.” However, she later stated that she did not really know how fast he was traveling. She stated that the impact of the collision swung her car completely around and damaged it from one end to the other with most of the damage concentrated around the center post on the driver’s side.
James R. Kyle, the police officer who investigated the accident, testified that he did not witness the accident and had no independent recollection of it. However, his report showed that the speed limit on N. Peters Street was 30 mph and that plaintiff told him that his speed before the acci *781 dent was 35 mph. The report noted skid marks from plaintiff’s vehicle ranging from 30 to 45 feet and further indicated damage to plaintiff’s vehicle as heavy and damage to defendant’s vehicle as moderate with most of the damage to the rear of the driver’s door. The police report further indicated that the impact of the collision spun defendant’s vehicle around so that if was facing in the direction from which it had come and that plaintiff’s vehicle did not move after impact.
Mrs. Leona H. Terrebonne, defendant’s passenger, testified Mrs. Lenz stopped at the stop sign on Iberville Street then started out and slowed down. She stated she then heard Mrs. Lenz’s brakes squeal, she looked up, and the accident occurred. She testified she had not seen plaintiff’s vehicle before the accident and could not confirm, defendant’s testimony that she had checked for traffic before proceeding.
Plaintiff introduced the testimony of Louis Smith, an independent eye witness to the accident. Mr. Smith testified that he observed the accident from a distance of approximately one quarter block as he was walking on N. Peters toward Iberville Street. He stated the squealing of brakes attracted his attention to the intersection and when he looked up he saw the defendant’s vehicle come out of Iberville Street, proceed into traffic, and the collision occur. He stated he saw the cars before the collision and estimated plaintiff’s speed at between 20 to 30 mph.
Although he provided no written reasons for judgment, the trial judge apparently concluded plaintiff had been traveling at an excessive rate of speed and accordingly dismissed plaintiff’s suit based upon application of the rule which states:
“. . . that a motorist who enters the intersection of the right of way street from a less favored street, may upon observing the yield or stop sign, then proceed across the favored street or turn into the favored street and assume that vehicles on that street will observe the speed limit. . . .” Camet v. Guillot, 291 So.2d 438 (La.App. 4 Cir. 1974).
While we recognize that the factual findings of the trial judge are entitled to great weight, based upon our careful review of the record we believe the conclusions he apparently reached are manifestly erroneous.
As previously stated, the trial was conducted in a piecemeal fashion over an extended period of time. An examination of the physical facts of the accident bears no indication that plaintiff was traveling at an excessive rate of speed. Plaintiff never lost control of his vehicle. Plaintiff’s skid marks were in a straight line and his vehicle stopped immediately upon impact. Furthermore, the testimonies of the witnesses do not indicate any excessive speed or lack of control. Mrs. Lenz’s testimony was extremely equivocal on the question of speed and she finally admitted that she really did not know how fast plaintiff’s car was traveling. Furthermore, her testimony that she traveled from twelve to fourteen feet during the same time period as plaintiff traveled over 300 feet is incredible and leads to the conclusion that she never saw plaintiff until a moment before the impact. Mrs. Terrebonne did not see the other car and, therefore, could not estimate its speed. Pitts stated he was traveling within the speed limit and independent eyewitness Smith estimated plaintiff’s speed at between 25 and 30 mph. Thus, the police officer’s statement that Pitts told him he was traveling 35 mph is the only evidence which is indicative in any respect of excessive speed. The police officer, however, readily admitted that he did not specifically remember what Pitts had told him but that he said something to the effect that it was approximately 35 mph. Pitts, though, testified that he was not looking at his speedometer before the accident and could not precisely estimate his speed but that he had told the police officer he was going 25 to 30 mph.
Upon this set of facts, we believe it was manifestly erroneous for the trial judge to *782 have apparently concluded that plaintiff’s rate of speed was such a contributing factor as to relieve Mrs. Lenz from the consequences of her negligence. We believe that the evidence clearly preponderates in favor of the conclusion that defendant was the sole and proximate cause of the accident in that she attempted to enter the superior thoroughfare at a time when it was obviously unsafe for her to do so because of the approaching Pitts vehicle. Blanchard v. All State Insurance Company, 240 So.2d 432 (La.App. 3 Cir. 1970). Accordingly, the judgment of the district court is hereby reversed.
Having reached the above result, we turn now to quantum. Plaintiff has prayed for an award for general damages, medical expenses, loss of wages, property damage and costs, including expert fees.
With respect to his claim for general damages plaintiff testified that the impact from the accident rendered him momentarily unconscious but that he did not at the time feel he had been injured. Subsequently, he stated his back began to stiffen and his neck began to hurt whenever he turned his head. He saw his family doctor for these complaints two days after the accident. His family doctor referred him to a specialist and the next day he saw Dr. Emmett Guillot. Dr. Guillot testified Pitts complained of pain in the shoulder and back which began the afternoon of the accident. His examination revealed positive physical findings of right trapezius tenderness, paralumbar tenderness and muscle spasm in the lower back. His diagnosis was an acute cervical lumbar sprain and he prescribed physiotherapy, heat treatments, pain medication and muscle relaxants. After extensive treatments for over two months, the doctor stated the patient’s neck problems had resolved but that he continued to complain of back pain. On August 18, 1972 the doctor referred plaintiff to a neurosurgeon, Dr. Kenneth Vogel, for treatment of a possible herniated disc. Plaintiff continued to see Dr. Guillot and on September 22, after finding tenderness in the lumbar area, Dr. Guillot continued the heat treatments. Plaintiff was next examined by Dr. Guillot on October 6, 1972 and again on January 8, 1973. At this time he complained of back pain in the morning. Although the doctor found no spasm he noted tenderness in the lumbar area. Dr. Guillot saw plaintiff again in September on referral back from Dr. Vo-gel and after finding slight lumbar tenderness continued his prior treatments. The patient was finally discharged in October 1973. At the time of discharge, examination revealed a total range of back motion. The total bill for Dr. Guillot’s services was $575.00.
Dr. Vogel first saw plaintiff on August 31, 1972 and after examination diagnosed a herniated lumbar disc. He encouraged the patient to employ complete back rest and to continue with Dr. Guillot’s therapy program. He stated that he believed at this time the patient was disabled for all types of gainful employment. On his next examination, about three weeks later, Dr. Guillot noted the patient’s condition as essentially unchanged. He saw plaintiff on February 1, 1973 and April 24, 1973. He stated the patient continued to complain of pain but that he found no evidence of a herniated disc. Dr. Vogel testified that he believed plaintiff had sustained a herniated lumbar disc which had resolved itself spontaneously in response to conservative treatments as happens in 90% of the cases he has seen. The total bill for Dr. Vogel’s services was in the amount of $115.00.
In an attempt to rebut the testimony of plaintiff’s treating physicians, defendants introduced testimony from Drs. Morrow, Kleinschmidt and Cary. Plaintiff saw Dr. R. Prosser Morrow on one occasion, approximately three months after the accident, with complaints of morning uretheral discharge. After examination of the discharged substance, the doctor concluded that plaintiff was suffering from nonspecific ureteritis and prescribed a sulphur drug. Defendants attempted to show through the testimony of this witness that plaintiff’s back problems were caused by *783 his ureteritis and were not a result of the accident. Dr. Morrow, however, stated that although this type of infection could cause some back pain, such pain would be more localized and would be in the area below that in which plaintiff’s complaints were centered.
On September 18, 1972 plaintiff was examined by an orthopedic surgeon, Dr. Arthur Kleinschmidt, at the request of his employer, Avondale Shipyards. Dr. Kleinschmidt stated that plaintiff dressed and undressed with relative ease and could bend without great difficulty. On examination, however, he noted that plaintiff voluntarily restricted his motion and he, therefore, believed him to be exaggerating his complaints. He found X-rays to be within normal limits, no evidence of a disc problem and no positive findings that plaintiff’s complaints were related to the accident. It was his opinion that although plaintiff might have sustained soft tissue injury to the lumbosacral spine as a result of the accident, there were no positive findings to substantiate his present complaints of pain. He admitted, though, it is not uncommon to have pain without any positive objective findings and also that in most cases where a herniated disc is diagnosed, surgery is not performed.
Finally, Dr. George Cary, another orthopedic surgeon, testified that he examined plaintiff at the request of defendants on two occasions. After his first examination on October 18, 1972 he found no objective findings in the lower back area and it was his opinion that the patient had sustained a strain to the right lower back which to the most extent had resolved itself by the time of examination. He did not believe that plaintiff was over-exaggerating his responses but also found nothing suggestive of a ruptured or slipped disc. His second examination on May 2, 1973 again revealed no objective findings and he found the patient to be relatively asymptomatic with slight complaints of stiffness in the lower back area. On this date, he further noted that plaintiff’s condition had markedly in-proved but that he believed plaintiff had sustained some type of lower back injury from the accident.
After carefully reviewing the record and assigning the proper weights to the testimonies of the various testifying physicians, O'Donovan v. Bankers Life and Casualty Company, 305 So.2d 643 (La.App. 3 Cir. 1974), we conclude plaintiff suffered an acute cervical sprain necessitating treatment for approximately two months and a lumbar sprain with a possible herniated disc causing great discomfort and necessitating treatment for over a year. We believe, after taking all factors into consideration, that the sum of $5,000.00 adequately compensates plaintiff for the pain and suffering which he has sustained.
Plaintiff has additionally prayed for damages for loss of wages resulting from his inability to perform his work as a painter’s helper at Avondale Shipyards. The evidence conclusively shows that plaintiff sustained a loss of wages for the period June 22, 1972 through October 17, 1972 as a result of his injuries. Uncon-tradicted testimony at the trial disclosed that at the time of the accident plaintiff was earning $3.18 per hour and was working 45 but was being paid for 47j/^ hours of work per week. Accordingly, we find plaintiff is entitled to recover the sum of $1,923.23.
We further find that plaintiff is entitled to recover the sum of $100.00, representing the deductible portion of his collision insurance, and medical expenses resulting from treatments by Dr. Guillot in the sum of $575.00; Dr. Vogel in the sum of $115.-00; and Dr. C. M. Nice, Jr., (for X-rays) in the sum of $30.00. Additionally, we assign expert fees to Drs. Guillot and Vogel in the sum of $150.00 each, to be taxed as costs.
For the foregoing reasons, the judgment of the trial court is hereby reversed and is now ordered, adjudged and decreed that *784 there be judgment herein in favor of plaintiff, Eddie Pitts, and against defendants, Ethel H. Lenz and The Hanover Insurance Company, jointly, severally and in solido in the full sum of $7,743.23 with interest thereon from date of judicial demand until paid. Costs, including experts’ fees in the total sum of $300.00, are to be paid by defendants.

REVERSED.